Bellacosa, J.
(dissenting in part). We agree with the Court
to affirm the Appellate Division order insofar as it resolves the *488 issues of the waiver of confidentiality of medical records and the performance of light duty. With respect to this Court’s affirmance of the portion of the Appellate Division order that upholds the authority of the municipal employer to impose surgical and medical treatments on police officers injured in the line of duty, we respectfully dissent and vote to modify.
General Municipal Law § 207-c should not be construed to effect forfeiture of police officer employee benefits for refusal to submit to surgical and medical treatments unilaterally mandated by physicians employed by the municipality, without at least the counterbalance of collective bargaining protections.
The Court has long recognized the "strong and sweeping policy of the State” to support employer-employee negotiations under the Civil Service Law (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778). Absent a clear and explicit withdrawal of this employer-employee matter from collective bargaining, sound statutory interpretation, legislative intent and public policy concerns militate against the imposition of such a profound, governmental, management, encroachment of employee, personal autonomy. The Public Employment Relations Board (PERB) ruled that the forfeiture of employee benefits for the refusal to submit to mandated surgical and medical directives is a matter outside the scope of collective bargaining. We agree with the Court that PERB’s determination is not entitled to special deference (see, Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd., 83 NY2d 315, 320; Matter of Webster Cent. School Dist. v Public Empl. Relations Bd., 75 NY2d 619, 626). On the pure statutory construction ground, however, we conclude that the PERB determination in this respect should be annulled.
In pertinent part, General Municipal Law § 207-c provides:
"Any sheriff, undersheriff, deputy sheriff or corrections officer of the sheriff’s department of any county or any member of a police force of any county * * * who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment shall be paid by the municipality by which he is employed the full amount of his regular salary. * * * Provided, however * * * the municipal health au *489 thorities or any physician appointed for the purpose by the municipality * * * may attend any such injured or sick policeman, from time to time, for the purpose of providing medical, surgical or other treatment, or for making inspections. * * * Any injured or sick policeman who shall refuse to accept medical treatment or hospital care or shall refuse to permit medical inspections as herein authorized * * * shall be deemed to have waived his rights under this section in respect to expenses for medical treatment or hospital care rendered and for salary or wages payable after such refusal” (emphasis added).
The fact that General Municipal Law § 207-c declares that an officer’s refusal to accept medical treatment shall be deemed a waiver of rights to benefits and salary does not solve or answer the essential and threshold issue in this case. This waiver provision introduces no final entity, procedural protections or process or mechanism for determining the necessity or propriety of municipal employer-mandated medical directives. The statute prescribes no regimen for rendering such determinations.
It is no answer, therefore, and plainly insufficient protection for employees, when the Court suggests that attendant procedures affecting the core power may be subject to collective bargaining or, ultimately, to judicial CPLR article 78 review or even to a generalized reasonableness standard. The merits or the review of the assigned treatment are not germane to the resolution of the issue of the power to compel in the first instance under statutory interpretation. Moreover, since no explicit or inescapably implied legislative expression takes the core power or the attendant procedural protections out of the traditional and ordinary collective bargaining sphere, the whole, intertwined power should be subject to that essential employer-employee protection and policy preference (see, Matter of Webster Cent. School Dist. v Public Empl. Relations Bd., 75 NY2d 619, 626-628, supra).
Our analysis flows from the obligation of courts to look to the statutory language and give it "its most obvious and natural meaning” (Ball v Allstate Ins. Co., 81 NY2d 22, 25; Matter of Greenberg [Ryder Truck Rental], 70 NY2d 573, 577; McKinney’s Cons Laws of NY, Book 1, Statutes § 94, at 188). Complementing that principle is the axiom that " '[wjhere the *490 statute is clear and unambiguous on its face, the legislation must be interpreted as it exists * * * [and] the courts may not resort to rules of construction to broaden the scope and application of a statute’ ” (Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674, quoting Bender v Jamaica Hosp., 40 NY2d 560, 561-562).
Transcending these general nostrums in this case is the explicitly apt State policy favoring the collective bargaining of terms and conditions of employment (see, Matter of Webster Cent. School Dist. v Public Empl. Relations Bd., 75 NY2d 619, supra). In Webster (at 627), the Court held unanimously that "any implied intention that there not be mandatory negotiation must be 'plain and clear’ (Syracuse Teachers Assn. v Board of Educ., 35 NY2d 743, 744), or 'inescapably implicit’ in the statute (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778 [other citation omitted]).”
The instant case fails these general and specific statutory interpretation tests with respect to the subject of unilateral power of a municipal employer to impose surgical and medical protocols under penalty of forfeiture of statutory employee benefits. The plain language of the statute evinces no express or implied legislative intent that a municipal employer, through its physicians, is unilaterally empowered to command its employees to submit themselves to invasive physical and medical procedures and treatments (compare, Rivers v Katz, 67 NY2d 485, 492; see also, Schloendorff v Society of N. Y. Hosp., 211 NY 125, 129). Indeed, the active phrase of art is "attend * * * for the purpose of providing,” a phrase very different from the more easily articulated "may direct” — if that is what the Legislature intended.
General Municipal Law § 207-c is a remedial statute enacted for the benefit of police officers injured in line of duty. As such, it must be liberally construed in their favor (see, Matter of Mashnouk v Miles, 55 NY2d 80, 88). As noted, the Legislature invested the physicians of municipal employers with the limited authority to "attend” the injured police officer "for the purpose of providing medical, surgical or other treatment.” Augmentation of this limited role and authorization, however, with the extraordinary unilateral power to order surgical and medical protocols, is not expressly, reasonably, or inescapably implied in the statute. For courts to infer such a profound transformation and vast intrusive power from legislative silence would be unusual in any case, but in matters such as *491 are in dispute here — mandatory medical protocols under penalty of forfeiture of employee salary and medical benefits— would be astounding, especially in the face of the more restrictive legislative language actually used. The Court’s gloss thus lacks statutory roots or interpretative sustenance and transgresses the limitation on legislating under the guise of statutory construction (see, People v Heine, 9 NY2d 925, 929). At the very least, New York’s well-established preference for allowing such subjects to be resolved by collective bargaining ought to play a part (see, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778, supra).
Our analysis and application of these principles is cogently reinforced by legislative history. Relevant memoranda submitted by the Department of Law to the Governor indicate that the primary purpose of this law is to provide "for payment of salary, medical and hospital expenses” for injured or sick police officers (Mem of Dept of Law, Bill Jacket, L 1961, ch 920; see, Governor’s Approval Mem, 1961 NY Legis Ann, at 486-487). The Bill Jacket contains no reference to granting municipal physicians unilateral authority to order medical protocols without at least collective bargaining protections. Because the determination that a police officer must submit to employer-directed medical procedures violates personal autonomy, ordinary collective bargaining protections seem sensible and necessary, absent an explicit legislative withdrawal of that employee safeguard, which could have been so plainly set forth if intended (see, Rivers v Katz, 67 NY2d 485, 492, supra; Schloendorff v Society of N Y. Hosp., 211 NY 125, 129, supra; see also, Winston v Lee, 470 US 753, 759; Mills v Rogers, 457 US 291, 299).
The Legislature might arguably have explicitly prohibited collective bargaining with respect to this significant subject matter for some compelling, demonstrable State purpose. It did not do so. That ought to be the end of this case on that issue.
In this setting, on this record and on this statute’s reading, this essential safeguard should be accorded priority, at least for collective bargaining protections purposes, over a statutory interpretation which, only by substantial judicial gloss, would justify unilateral and mandatory medical directives from municipal employers against the interests of particular public safety employees. Frankly, we find it hard to conjure up any term of employment that would impinge more significantly *492 upon an individual employee’s personal prerogatives than does the subject that divides our ruling on this part of this case.
Thus, we would modify the order of the Appellate Division and annul that part of the PERB determination that removes employer-mandated surgery from collective bargaining give and take.
Chief Judge Kaye and Judges Simons, Titone and Levine concur with Judge Smith; Judge Bellacosa dissents in part in a separate opinion in which Judge Ciparick concurs.
Order affirmed, without costs.